UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YAOSHENG ZHOU,

                Petitioner,

    v.

BRUCE SCOTT et al.,

                Respondents.

CASE NO. 2:26-cv-01779-LK

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS

This matter comes before the Court on Petitioner Yaosheng Zhou's Petition for Writ of Habeas Corpus. Dkt. No. 1. For the reasons stated below, the Court grants in part and denies in part the petition.[1]

## I.      BACKGROUND

Zhou is a native and citizen of China. Dkt. No. 6 at 1. On or about January 30, 2024, he was encountered by a U.S. Customs and Border Protection ("CBP") officer in or near Tecate, California, where the CBP officer determined that Zhou had "entered [the United States] without inspection and lacking valid documents." *Id.* On February 4, 2024, the U.S. Department of Homeland Security ("DHS") issued Zhou a Notice to Appear ("NTA"), charging him as

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 1

inadmissible under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). *Id.* at 2; *see also* Dkt. No. 7-1 at 1. He was released on an Order of Recognizance ("OREC")—issued "[i]n accordance with section 236 of the [INA]," codified at 8 U.S.C. § 1226—with conditions including that he must not change "place of residence without first securing written permission" and must not "violate any local, State or Federal laws or ordinances." Dkt. No. 7-2 at 1. Zhou resided in Flushing, New York at the time. Dkt. No. 7-1 at 1. Following his release on the OREC, Zhou relocated to Tacoma, Washington. Dkt. No. 1 at 6; Dkt. No. 5-3 at 2.

On an unknown date, the U.S. Immigration and Customs Enforcement and Removal Operations ("ERO") office in Medford, Oregon "received a referral from DEA Medford indicating that ZHOU, Yaosheng might be present in a planned search warrant in Gold Hill, Oregon." Dkt. No. 5-3 at 3. According to Zhou's DHS I-213 Form, "[o]n September 18, 2025, at approximately 011:00 am, ERO Medford's Fugitive Operations . . . . apprehended [him]," and "[a] check of Immigration and Customs databases revealed [that he] is NTA out on OREC." *Id.* The form also states that Zhou "had his OREC cancelled due to being found working at an illegal marijuana farm, violating the terms of this release." *Id.* On the same day, a Supervisory Detention and Deportation Officer issued a warrant for Zhou's arrest. Dkt. No. 5-4 at 2. He was transported to the Northwest ICE Processing Center ("NWIPC"), where he is currently detained. Dkt. No. 6 at 2. DHS records state that Zhou has no criminal history. Dkt. No. 5-3 at 3.

According to Zhou, "[t]he officers did not show [him] any warrant for his arrest; gave him no advance notice of any intent to revoke his release on his Order of Recognizance; provided him no statement of reasons for the cancellation of that OREC; and afforded him no opportunity to respond to any allegation, to consult with counsel, or to be heard before a neutral decisionmaker before he was taken into custody." Dkt. No. 1 at 6.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 2

On May 21, 2026, Zhou filed a petition for a writ of habeas corpus pro se. Dkt. No. 1. Respondents[2] filed a return, Dkt. No. 4, and Zhou filed a traverse, Dkt. No. 9.

## II.    DISCUSSION

Zhou asserts that Respondents violated his right to due process under the Fifth Amendment by re-detaining him without adequate procedural safeguards. *See* Dkt. No. 1 at 2–3, 8–10. He requests release from custody, an order requiring "Respondents to certify compliance with this Court's order by a filing on the docket within twenty-four hours of the order," and a declaration that his "detention is governed by 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2)(A)." *Id.* at 12.

### A.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the

---

[2] Although Bruce Scott has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 3

scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B.     Zhou Has Established a Due Process Violation**

The parties dispute which statute applies to Zhou. *See* Dkt. No. 1 at 7–8; Dkt. No. 4 at 5–6. The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022); *see also id.* at 1203 (explaining that because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the court could not accept petitioner's "suggestion that [the court's] decisions regarding other detention provisions] mandate[d] the same procedural relief in this case"). Accordingly, the Court first addresses the applicable statutory process and then addresses due process.

1.      Process Required by the Statute

a.      *8 U.S.C. § 1226(a) is the Applicable Statutory Authority*

Zhou states that 8 U.S.C. § 1225(b)(2)(A) "does not apply" to him because he "entered the country more than two years ago," "has resided in the State of Washington since February 2024," and was "plainly not 'requesting lawful entry into the United States after inspection and authorization.'" Dkt. No. 1 at 7–8 (quoting *Barbosa da Cunha v. Freden*, 175 F.4th 61, 74 (2d Cir. 2026)). Respondents aver that Zhou "is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A)" because he "was never lawfully admitted" and is therefore "properly considered to be an applicant for admission." Dkt. No. 4 at 2 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026)).

8 U.S.C. § 1225 applies to "applicants for admission" to the United States. An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit," § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). "That express exception to detention implies that there are no *other* circumstances under which aliens detained under §1225(b) may be released." *Id.* at 300.

As stated repeatedly,[3] this Court agrees with the reasoning of *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. Sept. 30, 2025) and countless other courts across the country: "The plain text of section 1226(a)" implies that the "default discretionary bond procedures in section 1226(a)"—rather than mandatory detention procedures under 8 U.S.C. § 1225(b)— apply to noncitizens who are "'present in the United States without being admitted or paroled'

---

[3] *See, e.g., Sanchez Henao v. Hernandez*, No. 2:26-CV-00707-LK, 2026 WL 905035, at *3 (W.D. Wash. Apr. 2, 2026); *Singh v. Noem*, No. 2:26-CV-00503-LK, 2026 WL 657036, at *3 (W.D. Wash. Mar. 9, 2026); *Balwan v. Bondi*, No. 2:26-CV-00248-LK, 2026 WL 497098, at *4 (W.D. Wash. Feb. 23, 2026).

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 5

under section 1182(a)(6)(A) but have not been implicated in any crimes as set forth in section 1226(c)." *Rodriguez Vazquez*, 802 F. Supp. 3d at 1322–23; *see also Lopez-Campos v. Raycraft*, 175 F.4th 713, 722–32 (6th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1266–85 (11th Cir. 2026). "[I]f the Court were to adopt the reading of section 1225 advanced by the [Respondents], it would render significant portions of section 1226(c) meaningless," including the recently enacted Laken Riley Act, which "carved out an additional category of noncitizens from section 1226(a)'s discretionary detention scheme who now fall under section 1226(c)'s mandatory detention authority." *Rodriguez Vazquez*, 802 F. Supp. 3d at 1325; *see also Barbosa da Cunha*, 175 F.4th at 70–78; *Avila v. Bondi*, 170 F.4th 1128, 1138–41 (8th Cir. 2026) (Erickson, J., dissenting). Furthermore, if Congress had wanted Section 1225(b) to have the effect urged by the government, "it could have said so in words far simpler than those that it wrote." *Buenrostro-Mendez,* 166 F.4th at 511 (Douglas, J., dissenting (quoting *Biden v. Texas*, 597 U.S. 785, 798 (2022)); *see also Lopez-Campos*, 175 F.4th at 724–25; *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).

Additionally, "where a petitioner has been 'treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,' the former is more likely to apply." *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (quoting *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025)); *see also Lopez-Campos*, 175 F.4th at 725 ("[T]he government's previously unbroken 29-year streak of applying § 1226(a) as opposed to § 1225(b)(2)(A) to noncitizens like Petitioners is consequential."). The government has treated Zhou as subject to discretionary detention under 8 U.S.C. § 1226 from the time he was first encountered by CBP officers and released on an OREC in January/February 2024 until his September 2025 arrest. Dkt. No. 7-2 at 1 (OREC issued "[i]n accordance with section 236 of the

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 6

Immigration and Nationality Act," which is codified at 8 U.S.C.§ 1226); *see also* Office of Homeland Security Statistics, *Glossary: Release on Recognizance*, https://ohss.dhs.gov/glossary (last visited June 24, 2026) (defining "Release on Recognizance" to mean "release from ICE detention subject to reasonable conditions of [a noncitizen] in removal proceedings after having been issued a Notice to Appear (NTA) or [a noncitizen] with an appeal pending with the Board of Immigration Appeals (BIA)" "*[p]ursuant to section 236(a) of the INA*" (emphasis added)). Furthermore, the NTA issued to Zhou in February 2024 listed him as a noncitizen "present in the United States without being admitted or paroled"—not "an arriving alien." *See* Dkt. No. 7-1 at 1. Nothing in the record prior to his September 2025 arrest suggests that Zhou's release was pursuant to Section 1225(b). These facts demonstrate that his detention is governed by 8 U.S.C. § 1226, not 8 U.S.C. § 1225.

Zhou does not discuss the adequacy (or lack thereof) of the procedural safeguards in Section 1226(a) in his petition, and absent any argument to the contrary, the Court assumes that these safeguards suffice for due process purposes. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). Because "the applicable statutory process shapes [the petitioner's] procedural due-process rights," *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020), the Court addresses the process required here.

      b.    *Procedures Required under 8 U.S.C. § 1226(a) and Implementing Regulations*

Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also*

*Jennings*, 583 U.S. at 288 ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

"Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes the initial determination whether to release a noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following this initial custody determination, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

Under DHS regulations, a noncitizen detained under Section 1226(a) bears the burden of showing, by a preponderance of the evidence, that he does not pose a danger to the community and is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Rodriguez Diaz*, 53 F.4th at 1197; *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006); *Matter of Barreiros*, 10 I&N Dec. 536, 537 (B.I.A. 1964). In assessing whether to release a noncitizen on bond, the immigration judge considers, among other factors, "the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country." *Rodriguez Diaz*, 53 F.4th at 1197 (citing *Guerra*, 24 I&N Dec. at 40); *see also Matter of E-Y-F-G*, 29 I&N Dec. 103, 104 (B.I.A. 2025). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the BIA. 8 C.F.R. §

236.1(d)(3). The detainee may also request an additional bond hearing based on a material change in circumstances. 8 C.F.R. § 1003.19(e).

If bond is granted, the noncitizen's bond can be revoked at any time, even if the noncitizen was previously released; however, if an immigration judge has determined that the noncitizen should be released, DHS may not re-arrest that noncitizen absent a change in circumstance. *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *see also Y.M.M. v. Wamsley*, No. 2:25-cv-02075, Dkt. No. 10 at 2 (W.D. Wash. Nov. 4, 2025) (Respondents' brief stating that it has "long been recognized by the Board of Immigration Appeals [that] a senior immigration official's exercise of discretion to revoke an individual's release under 8 C.F.R. § 236.1(c)(9) is limited to situations in which there has been a 'change in circumstance' since the non-citizen was initially released."). Only specific officials may revoke a noncitizen's OREC under 8 C.F.R. § 236.1(c)(9).

2.      Due Process Requirements

As discussed above, Zhou contends that his Fifth Amendment rights were violated by his re-detention without adequate procedural safeguards. Dkt. No. 1 at 8–10. Respondents argue that Zhou was not entitled to any process prior to being re-detained, and in any case, the revocation of his OREC was made pursuant to statutory authority. Dkt. No. 4 at 4–9. Specifically, Respondents aver that "[Zhou]'s material breach of the explicit terms of his OREC—which had been communicated to him in a language he understood—provided ICE with an objective basis to re-detain him without notice and a hearing." *Id.* at 6. Respondents characterize the "material breach" as Zhou being "encountered at an illegal marijuana farm thousands of miles away from where he

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 9

had indicated he would be residing without prior authorization from ICE, in violation of the terms of his OREC." *Id.*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id.* at 1179–80.

a.    *Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also*

*Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Zhou has been living and working in this country since January 2024. *See* Dkt. No. 1 at 5–7. After briefly detaining Zhou in 2024, DHS released him on his own recognizance. Dkt. No. 7-2. He has remained in the United States on an OREC since then. Dkt. No. 6 at 2. He is entitled to at least those protections described above with respect to his protected liberty interest in remaining out of immigration custody. However, given the OREC's requirements that Zhou "must not violate" any laws and must seek permission before changing his place of residence, and his post-OREC allegedly unlawful employment and relocation, Zhou's liberty interest in being free from custody "is not as strong as it would be for an individual without any showing of material changed circumstance[.]" *Quinonez Torres v. Hermosillo*, No. 2:26-cv-00076-TLF, 2026 WL 547591, at *9 (W.D. Wash. Feb. 23, 2026) (evaluating a charge for assault against a family or household member); *see also Tabares Reyes v. Hernandez*, No. 2:26-cv-00633-GJL, 2026 WL 820481, at *3 (W.D. Wash. Mar. 25, 2026) (evaluating a misdemeanor conviction for assault); *Orozco Valle v. Scott*, No. 2:25-cv-02429-JNW-TLF, Dkt. No. 15 at 11–12 (W.D. Wash. Jan. 5, 2026) (evaluating a post-release conviction for violating a no-contact order).

b.    *Procedural Protections*

To determine what procedures are constitutionally sufficient to protect petitioners' liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, as discussed above, Zhou has an interest in remaining out of immigration detention. *See Morrissey*, 408 U.S. at 482. Despite his liberty interest being "indeterminate" under an OREC, that interest "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* Relatedly, Zhou has an interest in the government adhering to its own procedures requiring (1) a revocation made by an appropriate official and (2) a bond hearing upon request. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); 8 C.F.R. § 236.1(c)(9). This factor favors Zhou, though as set forth above, it does not weigh strongly given the materially changed circumstances (i.e., the allegedly unlawful employment at an illegal marijuana farm and failure to report changed address).

Turning to the second factor, Respondents purported to detain Zhou under 8 U.S.C. § 1225(b), stripping him of his right to a bond hearing. *See* Dkt. No. 4 at 1. Furthermore, Respondents make no attempt to show that Zhou's OREC was revoked by an appropriate official.[4] The risk of erroneous deprivation is significant where the government fails to follow its own

---

[4] Respondents provide an OREC cancellation which is signed by an Assistant Field Office Director, Dkt. No. 5-6 at 2. However, Respondents do not explain how the Assistant Field Office Director was authorized to revoke the OREC; the regulation provides that only the "district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign)" are authorized to revoke a noncitizen's OREC. 8 C.F.R. § 236.1(c)(9). Moreover, it is not clear that the operative OREC was cancelled—the version of the OREC signed by the Petitioner does not have a cancellation signature, Dkt. No. 7-2 at 1, and the version of the OREC with a cancellation signature is not signed by Petitioner, Dkt. No. 5-6 at 2.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 12

procedures, thus depriving the noncitizen of process due. *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where ICE "did not provide petitioner the process required by its own regulations").

The additional procedures afforded under Section 1226(a) would substantially mitigate the risk of erroneous deprivation of Zhou's liberty, because those procedures allow detention only where the petitioner presents a flight risk or danger to the community. An adverse decision by an immigration judge in a bond hearing can further be appealed, and Zhou could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing would be subject to "numerous levels of review, each offering [him] the opportunity to be heard by a neutral decisionmaker." *Rodriguez Diaz*, 53 F.4th at 1210 (finding the bond hearing procedures available through the implementing regulations of Section 1226(a) would render "the risk of erroneous deprivation . . . relatively small") (citation omitted). While Respondents claim that Zhou was re-detained because he violated the terms of his OREC, that does not excuse their compliance with the applicable regulations. This factor weighs in favor of Zhou.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Respondents argue that the government's interests of "efficient enforcement, protecting the community from illegal drug operations, and ensuring [Zhou]'s appearance at removal proceedings" are "substantial and heightened" considering "[Zhou]'s unlawful conduct" and "failure to adhere to the conditions of his OREC[.]"

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 13

Dkt. No. 4 at 8–9. Deportation Officer Harold Britt, Jr. avers that Zhou "admitted to farming marijuana in rural Oregon" at his merits hearing on November 25, 2025, Dkt. No. 6 at 2, and Zhou does not contest this assertion, *see generally* Dkt. No. 9. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal [noncitizens]" and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, those interests are not impermissibly burdened by requiring the government to follow its own procedures regarding OREC revocations and bond hearings. Therefore, the Court finds that this factor too weighs in favor of Zhou.

Under *Mathews*, the Court finds that Respondents failed to provide Zhou with the process owed to him under the Due Process Clause, and he is therefore entitled to habeas relief.

## C.    Remedy

Zhou argues that release is the appropriate remedy, Dkt. No. 1 at 12, while Respondents argue that the appropriate remedy is a post-deprivation bond hearing, Dkt. No. 4 at 6, 8–9. Here, it appears that sufficient changed circumstances exist, *id.* at 6, such that a bond hearing is the appropriate remedy. *See, e.g.*, *Geler v. Blanche*, No. 2:26-CV-00481-LK, 2026 WL 1251660, at *7 (W.D. Wash. May 7, 2026).

The specific harm faced by Zhou is his detention for months without a bond hearing pursuant to Section 1226(a). "The Court finds that harm is remedied by ordering a bond hearing within seven days," and "[g]iven the due process rights at stake," if a bond hearing compliant with the Court's order is not provided promptly within that time frame, Zhou shall be immediately released on the terms of his most recent OREC or other terms appropriate under Section 1226(a). *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1162 (D. Nev. 2025); *see also Martinez Flores v. Kaiser*, No. 1:26-CV-00582-KES-CDB (HC), 2026 WL 482739, at *9 (E.D. Cal. Feb. 20, 2026)

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 14

(ordering same); *Solano Gallardo v. Warden*, No. 5:26-CV-00485-SSS-BFM, 2026 WL 483207, at *1 (C.D. Cal. Feb. 20, 2026) (ordering same); *Araiza v. Hermosillo*, No. 2:25-CV-02139-TL, 2025 WL 3516103, at *2 (W.D. Wash. Dec. 8, 2025) (ordering same); *see also Cardozo v. Bostock*, No. 2:25-cv-00871-TMC, 2025 WL 2592275, at *2 (W.D. Wash. Sept. 8, 2025) ("In modern habeas practice, courts often 'employ a conditional order of release,' which orders the government to release the petitioner unless it 'takes some remedial action' that corrects" the government's violation of the law. (quoting *Harvest v. Castro*, 531 F.3d 737, 741–42 (9th Cir. 2008))). Because the government has refused to follow its own regulations and now insists that a hearing was not required despite its regulations clearly requiring otherwise, *see generally* Dkt. No. 4, the Court finds that Zhou is entitled to a hearing before an immigration judge at which the government is required to prove by clear and convincing evidence that he is a danger to the community or a flight risk.

### III.    CONCLUSION

For the foregoing reasons, Zhou's petition for a writ of habeas corpus, Dkt. No. 1, is GRANTED IN PART and DENIED IN PART. The Court ORDERS the following relief:

1.    Respondents must provide Zhou with a bond hearing before an immigration judge within seven days of the date of this Order; provided, however, that any continuance granted at Zhou's request will toll this period. At the hearing, the government will have the burden of proving by clear and convincing evidence that Zhou is a danger to the community or a flight risk. Respondents must ensure that the hearing is recorded. Respondents are enjoined from denying bond to Zhou on the basis that he is detained pursuant to 8 U.S.C. § 1225(b).

2.    If a bond hearing compliant with this Order is not provided within seven days, Zhou shall be released from ICE custody immediately on the terms of his most recent OREC or

other terms consistent with Section 1226(a). Respondents must file a Status Report with the Court either confirming that Zhou received a bond hearing—and the results of that hearing—or otherwise confirming his release by July 9, 2026.

3.      If the immigration judge does not order Zhou released, Respondents are prohibited from transferring Zhou from this jurisdiction—i.e., the Western District of Washington— for 10 days following the immigration judge's decision, unless such transfer is necessary for medical evaluation, medical treatment, release, or extenuating circumstances.

Dated this 25th day of June, 2026.

Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 16